UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:07-CR-89 |
| V. | ) | (Phillips / Guyton) |
| | ) | |
| GRAY Y. JORDAN, | ) | |
| JULIA C. NEWMAN, | ) | |
| SHERRY FARMER, | ) | |
| WILLIAM JORDAN, | ) | |
| MELVIN SKINNER, and | ) | |
| SAMUEL SKINNER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This Court conducted a hearing on all pending pretrial motions on December 20, 2007. Gray Jordan was present with his attorney, Randall Reagan. Julia Newman was present with her attorney, Herbert Moncier. Sherry Farmer had no motions pending before the Court and her appearance was excused in advance of the hearing. Attorney Mark Sallee participated by telephone; his client William Jordan was excused from appearance at the hearing as he likewise had no motions before the Court. Attorney Michael McGovern was present with his client, Samuel Skinner. Melvin Skinner was present with his attorneys, Ralph Harwell and Tracy Jackson Smith. The government was represented by Assistant United States Attorney Hugh Ward. On December 21, 2007, the Court took the pretrial motions, the authority cited therein, along with the argument of counsel and the proffers of proof presented at the hearing under advisement. This Order is

intended to address all non-dispositive pretrial motions, with a Report and Recommendation to the District Court to follow with regard to the severance motions.

### 1. MOTION FOR ADDITIONAL BILL OF PARTICULARS [DOC. 43]
(NEWMAN)

Newman moves the Court to order the United States to provide further information on her role in the alleged conspiracy, to include whom she is alleged to have conspired with and when. Newman requests the following specific additional relief:

1. <u>James Michael West</u>: Information about the nature of the charged conspiracy as it relates to James Michael West, a defendant in 3:06-CR92, a case alleged to be related to this case. Newman seeks with dates when James Michael West became a cooperating individual and asks that the government clarify whether West was cooperating with law enforcement during the three day period, August 1 - 3, 2006. Newman asks that the United States clarify the nature of the continuing conspiracy after such time as West became a cooperating witness.

2. <u>Relationship Between Conspiracies</u>: Newman asks for the government to explain the inter-relationship of three charged conspiracies and identify whether she therefor is an "unindicted co-conspirator" in <u>United States v. Ramirez</u>, 3:07-CR-44. Also, Newman asks about a number of other particulars pertaining to the interplay of the prosecution theory on the three large cases.

### GOVERNMENT RESPONSE
[DOC. 47]

The United States does not respond to the merits of Newman's arguments, relying simply on the Court's previous ruling on Newman's Bill of Particulars issues. The response refers the Court to the government's previously-filed response at 3:06-CR-102 [Doc. 78].

ANALYSIS

The Federal Rules of Criminal Procedure provide broad authority for the Court to order the government to provide a bill of particulars when warranted. Rule 7(f) reads:

> [t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

However, the rules do not delineate under what circumstances it is appropriate for the Court to order such remedy. The Sixth Circuit has had occasion to addressed this issue a number of times and had provided ample guidance for lower courts. "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (citations omitted). The granting of a bill of particulars is within the court's discretion. See id. (holding that the appellate court reviews the denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other grounds by statute, United States v. Caseslorente, 220 F.3d 727 (6th Cir. 2000) (on sentencing issue).

The Sixth Circuit has held that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004), cert. denied, 542 U.S. 910 (2004). Furthermore, "a defendant is not entitled to a list of the names and

3

addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993).

The Sixth Circuit has approved the provision of dates that a defendant is alleged to have conspired. See, e.g., United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991); United States v. Fears, 450 F. Supp. 249, 251 (E.D. Tenn. 1978). This Court has already ordered the government to particularize Newman's involvement in this respect [Doc. 147 at pages 35-37] and finds no further remedy is necessary.

Newman's request includes the precise nature of the conduct alleged by the government, the location of such conduct; and Newman's relationship with persons purportedly involved in other cases. The Sixth Circuit rule is that "a defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d at 1375.

Aside from what may have been related through discovery disclosures, the Court finds there is a surfeit of information about the government's theory of this case available to the defendant on the public documents filed in the related cases on the court's electronic filing system. For example, the following narrative of the government's allegations is gleaned from a brief perusal of the public filings in United States v. West, et al, 3:06-CR-092; United States v. Skinner, et al., 3:06-CR-100; United States v. Jordan, et al., 3:06-CR-89; and United States v. Ramirez, et al, 3:07-CR-44, the cases named in Newman's motion:

From 1995, defendant West and others obtained quantities of marijuana and distributed it to individuals in the Eastern District of Tennessee, Florida, Georgia and elsewhere. James Michael West Agreed Factual Basis 3:06-CR-92 [Doc. 63]. "Julie Newman was a marijuana customer of James Michael West and that Gray Jordan was an employee of James Michael West in the drug trafficking and money laundering conspiracy." 3:06-CR-92 [Doc. 63 at page 2]. "From 2001,

4

coconspirator Phillip A. Apodaca became defendant West's principal source of marijuana... Defendant West rented residences in Tucson, Arizona, to use these locations as stash houses and transportation points for the marijuana he was obtaining from coconspirator Apodaca. Defendant West employed Gray Y. Jordan at these locations in Tucson, Arizona to supervise the transportation of marijuana. From 2001, defendant West employed Melvin Skinner... to transport at least six to eight loads of marijuana from Tucson, Arizona ... to the Eastern District of Tennessee, the Atlanta, Georgia area and elsewhere." 3:06-CR-92 [Doc. 63 at pages 2 - 3].

On January 7, 2006, police outside Tucson, Arizona made a traffic stop that resulted in the arrest of an individual for money laundering after s/he was discovered to be in possession of some $362,000 in cash. 3:07-CR-44 [Doc. 97-3, ¶14]. That person provided assistance to law enforcement by providing information and recording conversations in support of the ensuing investigation of a marijuana trafficking conspiracy in the Eastern District of Tennessee and the Western District of North Carolina. Id.

On July 16, 2006, state and federal law enforcement officers executed a series of search warrants related to this investigation. 3:06-CR- 100 [Doc. 1-2, ¶6]. The investigation, lead by the DEA, included several months of surveillance of various persons suspected to be complicit in the conspiracy. The surveillance included telephone wiretaps, surreptitiously recorded meetings, GPS tracking of physical location, and physical observations. Shortly thereafter, police effectuated the arrest of six persons named in an indictment issued on July 11, 2006, by a Grand Jury for this district, designated 3:06-CR-92. James West was arrested on July 16, 2006, and began cooperating with law enforcement. 3:07-CR-44 [Doc. 97-3, ¶16]. Ultimately all six persons (and two corporate entities) plead guilty pursuant to plea agreements reached with the United States. 3:06-CR-92 [Doc.

5

186], [Doc. 187] (Mark Anthony Cort); [Doc. 77], [Doc. 78], [Doc. 148] (Bernadette Trent West); [Doc. 74], [Doc. 75], [Doc. 114] (Ronald Scott West); [Doc. 65], [Doc. 66] (Joanne Baker West); [Doc. 62], [Doc. 63] (James Michael West).  Some of these defendants have been sentenced, while others are awaiting sentencing, presumably in order to bring the value of any trial testimony to the attention of the District Court in assessing the weight of assistance to law enforcement offered pursuant to U.S.S.G. § 5K1.1. See e.g., [Doc. 62 at ¶4 and ¶8]; [Doc. 65 at ¶4 and ¶8].  Some of the information James West provided to law enforcement about the alleged drug conspiracy confirmed West's marijuana trafficking relationship with several persons ultimately charged in United States v. Ramirez, et al, 3:07-cr-44 and provided the basis for a search warrant in Arizona. [Doc. 97-2].

On July 17, 2006, a criminal complaint charged Frank Asbury of Cosby, Tennessee with conspiracy to distribute marijuana.  3:06-CR-100 [Doc. 1].  The affidavit submitted in support of the complaint alleges that Asbury was involved in a marijuana conspiracy with James Michael West, Ronald Scott West, Melvin Skinner and Samuel Skinner, describing the investigation in some detail. [3:06-CR-100 [Doc. 1 - 2,  ¶3].  The affidavit asserts that:

> [DEA Agent Mike Davis] learned during the evening hours of July 15, 2006, that the couriers who were transporting the new shipment [of marijuana] were at a truck stop in the northern part of Texas.  During the early morning hours of Sunday, July 16, 2006, DEA agents from the Northern District of Texas moved in and searched a recreational vehicle (RV) being driven by the couriers.  The couriers, identified as Melvin Skinner and his son, Samuel Skinner, were found to be in possession of approximately 1,000 pounds of marijuana in the RV, at which time they were arrested.
> 3:06-CR-100 [Doc. 1 - 2, ¶5]

The investigation and arrest of Melvin Skinner and Samuel Skinner has been described in detail during evidentiary hearings conducted by this Court on suppression motions filed by both.

6

Transcript of Proceedings, 3:06-CR-100 [Doc. 71] and [Doc. 72] (recording two days of testimony).

On August 1, 2006, a Grand Jury issued an indictment charging Gray Jordan, Julie Newman, Sherry Farmer, William Jordan and Christopher Kortz in a conspiracy to commit money laundering and marijuana trafficking. 3:06-CR-102 [Doc. 3]. Christopher Kortz has entered into a plea agreement with the government wherein he has agreed to cooperate with law enforcement and to provide testimony at trial. [Doc. 203, ¶6 and ¶8]. Kortz may be reasonably expected to testify consistently with the statements set forth in his Agreed Factual Basis [Doc. 204], which alleges that:

> Defendant Kortz knows from personal knowledge that coconspirator Julia Newman transported drove quantities of marijuana from the western United States to the Atlanta, Georgia area on behalf of James Michael West. Defendant Kortz knows from personal knowledge that cocnspirator Julia Newman transported United States currency in payment for the marijuana to the southwestern United States. Defendant Kortz obtained quantities of marijuana from coconspirator Julia Newman when coconspirator James Michael West was unavailable for his supply.
> [Doc. 204 at page 2].

On July 18, 2006, Phillip Apodaca was arrested at his residence in Tucson, Arizona during the execution of a search warrant on May 11, 2007. [Doc. 97-2, ¶18]. Apodaca plead guilty on November 16, 2006, to money laundering and drug trafficking offenses and began cooperating with law enforcement. [Doc. 97-2, ¶18]. Further, the Court notes that even more information may be available to the defendant in the form of witness testimony at hearings in the related cases.

This description does not include the United States' filed responses to requests from multiple defendants in these cases for bills of particulars, describing the conduct and role of each. The Court finds Newman is sufficiently apprised of the charges that she is facing to permit her to prepare her defense, to avoid surprise at trial, and to protect against a double jeopardy violation. Newman's Motion for a Bill of Particulars **[Doc. 43]** is **DENIED**.

7

## 2. MOTION FOR BILL OF PARTICULARS
## [DOC. 21]
### (MELVIN SKINNER)

Melvin Skinner does not request particulars about the basic criminal offense, rather he seeks information about the financial transactions the United States will rely upon to demonstrate money laundering. The government responds that Melvin Skinner is well-aware of the facts and circumstances of the government's allegations and that a bill of particulars is not necessary. The response sets forth to vast pool of information available to Melvin Skinner from which the details of the government's case are set forth. The response also restates a summary of the government's theory of the case. The Court finds that sources of information already available to the defendant, along with the government's response alleging that Melvin Skinner physically transported drug proceeds from place to place on behalf of the conspiracy, provide adequate detail within this context. Melvin Skinner's Motion for Bill of Particulars **[Doc. 21]** is **DENIED**.

## 3. REQUEST FOR DISCLOSURE OF EXCULPATORY MATERIAL [DOC. 23]
### (MELVIN SKINNER)

In a broad motion, Melvin Skinner requests any material pertaining to a list of 15 descriptions of possible evidence and material sought by the defendant. The motion does not include a specific Brady request.

The United States responds at [Doc. 32] that it is aware of its obligation to disclose under Brady and its progeny, in addition to the Court's Order on Discovery and Scheduling, and will continue to comply.

The Court finds that it has already ordered the government to turn over materials within the scope of Brady. Furthermore, the government has acknowledged its duty under Brady and Kyles,

8

and has stated that it is taking the necessary steps to comply with its discovery obligations. To the extent that the defendant relies on its motion, the Court finds it overly broad in that the request appears to impose a greater duty on the prosecutor in this case than that required by Kyles. Accordingly, Melvin Skinner's Motion for Disclosure of Exculpatory Material **[Doc. 23]** is **DENIED.**

### 4. MOTION TO COMPEL DISCLOSURE OF FAVORABLE MATERIALS AT A TIME THAT THE DEFENSE CAN MAKE MEANINGFUL USE OF THE MATERIALS AT TRIAL  [DOC. 45]
(NEWMAN)

At the outset, Newman's motion anticipates the government's response that it is aware of the Brady-Kyles responsibility and will provide materials consistent with their mandates. Although this is problematic, according to Newman, the instant motion addresses a different issue: the timing of disclosure. Newman states that a Brady-Kyles disclosure made by the government is only "the tip of the iceberg" in most cases. A meaningful defense investigation prompted by the initial disclosure often reveals significant exculpatory material, especially as to cooperating witnesses. This simply cannot be accomplished when the prosecution meets the bare minimum requirement of token disclosure at or very near trial.

Newman points to what she describes as three common practices to demonstrate this problem in action: First, defense counsel is handed an arrest record for a cooperating witness during the trial. Newman argues this is essentially a meaningless disclosure, especially if the record includes out-of-state matters. Second, defense counsel is handed a plea agreement with factual basis for a cooperating witness during the trial. Newman argues this creates a particular problem because defense counsel is unable to ascertain any pre-plea benefits that may have been secured in exchange

9

for the testimony, such as the common practice of reducing the drugs for which a person is held accountable in the factual basis, thereby reducing the starting point for any U.S.S.G. § 5K1.1 downward departure at sentencing and capping the defendant's sentencing exposure below that which may be otherwise sought by the government. Newman argues that a specific example of this can be found in this conspiracy as to defendant Ronald Scott West, found at [Doc. 45, page 3], who Newman argues would be ineligible for the sentence recommended by the United States if he were involved in the conspiracy charged in United States v. Ramirez, et al 3:07-CR-44. The third described problem relates to "isolated police reports from other states." Newman argues that disclosure during or near trial make it virtually impossible for defense counsel to investigate the circumstances reflected in the statement.

GOVERNMENT RESPONSE

The United States argues that Newman's request for relief has been ruled upon in prior motions filed in 3:06-CR-102 (listing eleven document numbers from that case). The government refers to its previously-filed response in 3:06-CR-102 [Doc. 128].

ANALYSIS

The Court finds it has previously ruled on the relief sought by Newman in this motion, Motion to Compel Disclosure of Favorable Materials at a Time That the Defense Can make Meaningful use of the Materials at Trial **[Doc. 45]** is **DENIED**.

### 5. MOTION TO BE ALLOWED TO FILE ADDITIONAL MOTIONS AFTER THIS COURT RULES ON HER MOTIONS TO DISMISS AND MOTIONS TO COMPEL AND AFTER HER INVESTIGATION OF LATE PRODUCED DISCOVERY [DOC. 46]
(NEWMAN)

On December 5, 2007, this Court ruled on Newman's Motions to Dismiss and Motions to Compel. Newman has not filed additional motions arising from those rulings. If Newman finds that additional motions are appropriate in view of late discovery, she is directed to file a Motion for Leave to File stating the facts supporting consideration of a the late motion, with the proposed motion attached. Accordingly, **[Doc. 46]** is **DENIED**.

### 6. MOTION TO EXCLUDE UNTIMELY DISCOVERY [DOC. 60]
(NEWMAN)

Newman objects to the government's late disclosure of discovery material, revisiting her ongoing objection in view of continued disclosure from the prosecution. The United States responds with a description of disclosures in this case, explaining that the most recent disclosures were made after specific material was requested by defendants. The government reports that defendants were notified of the availability of the recent material as soon as it was received by the prosecution. [Doc. 61]. The United States submits three exhibits describing the discovery materials.

Assuming the government's actions constituted a violation, the Federal Rules of Criminal Procedure give the Court discretion in fashioning the proper remedy for discovery abuses. Fed.R.Crim.P. 16(d)(2) provides that a court may "grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other orders as it deems just under the circumstances." Id. The trial has in fact been continued for unrelated reasons. [Doc. 53]. The defendant has now been afforded an opportunity to sufficiently review the discovery materials at

issue, one remedy available if the Court were to conclude the government committed a discovery violation. The Court finds that no additional remedy is warranted under the circumstances. Accordingly, Newman's Motion to Exclude Untimely Discovery **[Doc. 60]** is **DENIED**.

### 7. MOTION FOR PRE-TRIAL HEARING TO DETERMINE THE ADMISSIBILITY OF AUDIOTAPES [DOC. 19]
(MELVIN SKINNER)

Melvin Skinner states that the United States reports it intends to introduce some 40 audiotapes at trial. In case the attorneys for the parties are unable to reach an agreement as to the admissibility of various tapes and the authenticity of transcripts, Melvin Skinner asks for a pretrial hearing on this issue. The government responded that it will work together with Melvin Skinner's counsel to review all audiotapes and transcripts for the purpose of stipulating their admissibility at trial. At the hearing, the parties agreed that there was no issue for adjudication by the Court and counsel would continue their efforts to resolve admissibility issue prior to trial. Motion For Pre-Trial Hearing to Determine the Admissibility of Audiotapes **[Doc. 19]** is **DENIED** as premature, with leave to raise the request at a later date should the need arise.

### CONCLUSION

For the reasons stated above, it is ORDERED:

    1. Julia Newman's Motion for Bill of Particulars **[Doc. 43]** is **DENIED**.

    2. Melvin Skinner's Motion for Bill of Particulars **[Doc. 21]** is **DENIED**.

    3. Request for Disclosure of Exculpatory Material **[Doc. 23]** is **DENIED**.

12

4.  Motion to Compel Disclosure of Favorable Materials at a Time That the Defense Can Make Meaningful use of the Materials at Trial  **[Doc. 45]** is **DENIED**.

5.  Motion to be Allowed to File Additional Motions After This Court Rules on Her Motions to Dismiss and Motions to Compel and After Her Investigation of Late Produced Discovery **[Doc. 46]** is **DENIED**.

6.  Motion to Exclude Untimely Discovery **[Doc. 60]** is **DENIED**.

7.  Motion For Pre-Trial Hearing to Determine the Admissibility of Audiotapes  **[Doc. 19]** is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

　　　s/ H. Bruce Guyton　　　
United States Magistrate Judge

13