UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WILLIAM CAPERS JORDAN, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| vs. | ) Nos. 3:07-CR-00089 / 3:14-CV-00149 |
| | ) REEVES/GUYTON |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Respondent.* | ) |
| | ) |

## ORDER

Defendant William Capers Jordan[1] ("Capers") has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 332]. The United States has responded to the motion, objecting to Caper's requested relief [Doc. 345] to which Capers has filed a reply [Doc. 351] and a supplemental reply [Doc. 358]. The matter is now ripe for consideration.

**I. BACKGROUND**

On July 18, 2007, the grand jury returned an indictment charging Capers and others with conspiring to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and money laundering in violation of 18 U.S.C. § 1956. [Doc. 3, *Indictment*]. On January 21, 2009, Capers and three other codefendants proceeded to trial. Following a ten day trial, Capers was convicted as charged, [Doc. 181, *Jury Verdict*], and he was ultimately sentenced to 192 months' imprisonment [Doc. 297, *Judgment*]. He subsequently filed a direct appeal, and the Sixth Circuit Court of Appeals affirmed his conviction and sentence.

---

[1] In the Sixth Circuit's opinion in this case, it referred to Petitioner as "Capers." To maintain consistency and reduce confusion, this Court will do the same.

1

*United States v. Jordan*, 511 F. App'x 554 (6th Cir. 2013). Capers then timely filed this § 2255 motion [Doc. 332].

**II. STANDARD OF REVIEW**

A prisoner in federal custody may file a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish a claim of ineffective assistance, Capers must demonstrate two essential elements: (1) that his counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2)

that his counsel's deficient performance prejudiced his defense, *i.e.* deprived him of a fair criminal proceeding, rendering the outcome of the proceeding unreliable. *Id*. at 687-88.

III.     **ANALYSIS**

In his § 2255 motion, Capers first claims his counsel was ineffective prior to trial. In this category of claims, he alleges the following: (1) his counsel failed to move to suppress evidence obtained from an illegal search and seizure and illegal search warrant, and (2) his counsel concealed evidence pertinent to his defense. [Doc. 332, p. 5]. Next, Capers claims his counsel was ineffective for concealing "[counsel's] prior association with the prosecution's primary witness," resulting in his counsel withholding crucial evidence supporting the defense at trial. [*Id.* at 6]. His final claim is that his counsel was ineffective at trial in the following respects: (1) his counsel failed to object to a *Brady* violation; (2) his counsel failed to object to the jury pool, which Capers claims was biased; (3) his counsel failed to object to the introduction of hearsay testimony; (4) his counsel failed to present evidence pertinent to his defense; and (5) his counsel failed to object to the dual role of the DEA agent who testified as both an expert and a lay witness. [Doc. 332, pg. 8; Doc. 339, pg. 13, 16-17].

A.     **Ineffective Assistance of Counsel Prior to Trial**

i.     **Counsel's failure to move to suppress evidence**

First, Capers alleges that counsel was ineffective for failing to "attempt to suppress evidence based on [an] unlawful search and seizure and illegal search warrant in a competent manner" despite Capers' request. [Doc. 332, *Motion to Vacate,* pg. 4; Doc. 339, *Memorandum in Support of Motion,* pg. 11]. He asserts that because counsel "failed to conduct any meaningful pretrial discovery," counsel was "totally unaware that certain damaging evidence might have been the appropriate subject for a suppression motion." [Doc. 339, pg. 12]. Capers argues that a search

3

of his home occurred pursuant to a warrant premised on false testimony by a law enforcement agent. [Doc. 351, *Reply to Government's Response,* pg. 5]. He contends that the officer swore under oath that he saw a marijuana plant in Capers' home, but given the fact that no plants were discovered except catnip, this statement was "a blatant falsehood." [*Id.*]. Thus, he argues, his counsel should have filed a motion to suppress.

The "[f]ailure to file a motion to suppress may be ineffective assistance," it is "not ineffective assistance of counsel *per se*." *United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)). The Supreme Court has explained that

> [a]lthough a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim . . ., a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Kimmelman*, 477 U.S. at 382.

Capers' claim fails because he does not identify what evidence he seeks suppressed. Indeed, he claims "no plants were discovered in the ensuing search…." [Doc. 351, *Reply*, pg. 5-6]. Based upon Capers' recitation of the facts, he has not been prejudiced by any failure to file a motion to suppress. Accordingly, the Court finds this claim without merit.

### ii.    Counsel's concealment of evidence pertinent to the defense

Next, Capers asserts that his counsel "concealed evidence pertinent to the defense." [Doc. 332, pg. 5]. Other than this bare accusation, Capers provides no supporting details or context for his claim. It appears, however, that this claim relates to his allegation that his counsel had a conflict of interest and as a result withheld evidence pertinent to his defense [Doc. 332, pg. 6]. The Court

4

will address the conflict of interest issue *infra.* To the extent this allegation is independent of the conflict of interest claim, it is denied as it is purely conclusory and otherwise is without any factual support. "Generally, courts have held that "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quoting *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012)); *see also Milburn v. United States*, No. 2:10-cv-66, 2:05-cr-100, 2013 WL 1120856, at *1 (E.D. Tenn. Mar. 18, 2013) ("A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255." (citing *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972)).

**B.     Ineffective Assistance of Counsel for Concealing a Conflict of Interest**

Capers asserts "[d]efense counsel was aware of – and actively covered up – his prior association with the prosecution's primary witness. As a result, crucial evidence supporting the defense was withheld by defense counsel at trial." [Doc. 332, pg. 6]. Capers alleges the defense had a video of an art auction at the art gallery operated by Mr. James Michael West, ("Mr. West") who was the professed kingpin of the marijuana conspiracy. [Doc. 200, pg. 5]. On the video, Capers' attorney, Mark Sallee, can been seen bidding on pieces of art at the auction. [Doc. 358, pg. 9]. There is no allegation that Mr. Sallee is seen socializing with Mr. West, speaking with Mr. West, or having any contact with Mr. West. Capers does not allege that Mr. West is even in the video at all. However, he says the video proves the art gallery was a legitimate business and not a front for narcotics trafficking as alleged by the United States. [Doc. 358, pg. 5-6].

Notwithstanding that, he avers that because Mr. Sallee can be seen bidding at the art auction, he must have had a business relationship with Mr. West, who operates the art gallery. This, he claims, his counsel concealed from him, which he says "creates uncertitude [sic] in the

5

integrity of the proceedings." [Doc. 339, pg. 18]. He claims that when he discovered this relationship prior to his sentencing hearing, he terminated Mr. Sallee's representation.

Although Capers initially acknowledges that this alone does not constitute an actual conflict of interest, [Doc. 339, pg. 18], he later argues his counsel should have introduced the video to counter the Government's theory that the gallery conducted no legitimate business at all. [Doc. 351, pg. 9]. He also argues that Mr. Sallee had an actual conflict because he had to choose between two alternative actions once he learned he was in the video. One course of action was to show the video but this would "place [Mr. Sallee's] career as an officer of this Court in a precarious position." In doing so, at least he would be protecting his client. The other was not to show the video and compromise the defense. [Doc. 351, pg. 9]. The Court does not find this analysis accurate.

"[A] conflict of interest, by itself, is insufficient to justify reversal of a conviction…. A petitioner must demonstrate that an actual conflict of interest adversely affected his lawyers performance." *Whiting v. Burt*, 395 F.3d 602, 615 (6th Cir. 2005). When reviewing claims of ineffective assistance of counsel based on a conflict of interest, the Supreme Court has modified the normal *Strickland* test, holding that "if a defendant can show 'an actual conflict of interest [that] adversely affected his lawyer's performance,' prejudice may be presumed." *Kumar v. United States*, 163 F. App'x 361, 365 (6th Cir. 2006) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)). "Further, 'a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *McNeal v. United States*, 17 F. App'x 258, 262 (6th Cir. 2001) (quoting *Cuyler*, 446 U.S. at 348). "To establish an actual conflict, the defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests." *Id.* (citing *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996)).

Prior business relationships between attorneys and codefendants, by itself, do not constitute a conflict of interest. *White v. United States*, 16 F.3d 1223 (Table), 1994 WL 20094, at *4 (6th Cir. 1994). In *White*, defendant's counsel had a business relationship with and a history of representing one of White's codefendants in a drug conspiracy. *Id.* White subsequently claimed in a § 2255 motion that this prior relationship between his counsel and his codefendant constituted a conflict of interest. *Id.* The Sixth Circuit rejected this argument, holding that "[t]his relationship, on its face, presents no conflict of interest. . . . White provides no evidence, beyond mere allegation, of any possible conflict." *Id.* Indeed, the Sixth Circuit has even noted "friendships do not create 'actual conflicts of interest.'" *Kumar*, 163 F. App'x at 367 (quoting *Riggs v. United States*, 209 F.3d 828, 831 n.1 (6th Cir. 2000)).

That Mr. Sallee was present at an art auction and placed bids on pieces of artwork at the gallery that Mr. West operated does not create any conflict of interest. Unlike in *White*, Mr. Sallee and Mr. West are not business partners nor did Mr. Sallee ever represent Mr. West. *See White*, 1994 WL 20094, at *4. At no point was Mr. Sallee "burdened by any ethical obligation" to Mr. West and could not have been "hampered in his representation" of Capers as a result of his bidding on art at the gallery. *See McNeal*, 17 F. App'x at 263. The allegation that showing the video would put Mr. Sallee's "career as an officer of the Court in a precarious position" is simply unfounded. He does not allege that Mr. Sallee was engaging in any criminal activity or violating any ethics rules by bidding on pieces of artwork.

Capers cannot show that the introduction of the video would have had any impact on the result of this trial. Indeed, the evidence against Capers was overwhelming. The Sixth Circuit outlined the evidence that supported Capers' conviction in its decision and it did not involve his connection to the art gallery. *See Jordan*, 511 F. App'x at 559-60, 565-66.

Although the Court removed Mr. Sallee as Capers' counsel prior to his sentencing, Capers requested the termination "due to [counsel's] failure to contact [him] in regards to [his] sentencing," and because counsel had not "returned phone calls, emails, or letters nor [had counsel] contacted [him] post-conviction while [he had] been incarcerated . . . for over two years." [Doc. 271]. Based on these complaints, the Court removed Mr. Sallee as Capers' counsel [Doc. 282]. Contrary to Capers's claim, nothing suggests that his desire for new counsel stemmed from Mr. Sallee's bidding on art at the gallery and declining to use the video at trial. This issue is without merit.

C. **Ineffective Assistance of Counsel during Trial**

i. **Counsel's failure to object to a *Brady* violation**

Capers asserts that his counsel failed to object to the Government withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963) [Doc. 332, pg. 8]. Capers claims that he informed his counsel the Government was withholding taped conversations, which would contradict the testimony of the witnesses against him and mitigate the scope of his involvement in the conspiracy [Doc. 339, pg. 13]. He argues that law enforcement wiretapped Mr. West's phone and have in their possession his calls to Mr. West [Doc. 332, pg. 2]. He claims that the Government used the telephone records to show his involvement in the conspiracy, but did not disclose nor use at trial the actual recordings and transcripts of the calls [Doc. 332, pg. 2]. Capers alleges that the content of these calls were entirely innocent in nature, despite Mr. West's testimony to the contrary. In support of that, he claims that in one call, he actually declined to sell marijuana for Mr. West. [Doc. 332, pg. 2]. Indeed, Capers maintains that he was in contact with Mr. West merely to provide "support of the family's crisis with West's ailing daughter," which the audio recordings would have reflected. [Doc. 351, pg, 11]. He concludes that the Government withheld

the audio recordings and transcripts of these calls to prevent Mr. West from being impeached during trial. [Doc. 358, pg. 2].

"[T]he Supreme Court held in *Brady* ... that the government must provide defendants with material, exculpatory evidence in its possession. Failure to do so results in a trial that is fundamentally unfair." *United States v. Tavera*, 719 F.3d 705, 708 (6th Cir. 2013). "Impeachment evidence . . . as well as exculpatory evidence falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985); *see Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) ("The law in *Brady* . . . encompasses both exculpatory and impeachment evidence."). Thus, the Government is required to disclose both exculpatory and impeachment evidence that are material to guilt. *See Bell v. Bell*, 512 F.3d 223, 231 (6h Cir. 2008). Thus, the focus of the inquiry at this stage is on the materiality of the evidence at issue. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

In addressing the materiality of this evidence, Capers claims he "maintained contact with Mr. West in support of the family's crisis with West's ailing daughter." [Doc. 351, pg. 11]. Indeed, Capers' highlights the importance of this evidence by insisting that his "chief line of defense against the charges … was the fact that his sole reason for maintaining contact with Mr. West was because Mr. West's daughter had a hole in her heart and [he] attempted to be a good person and give support." [Doc. 351, pg. 8]. Notwithstanding Capers' altruistic purpose, his own trial testimony undercuts this professed altruism. During his direct examination, Capers identified only one phone call that was about Mr. West's daughter out of the 22 calls between them. [Doc.

9

216, pg. 208-09; Doc. 216, pg. 239]. Capers' explanation is simply unsupported by his own testimony.

To put these calls in context, the Court notes that the phone records show Capers' nearly constant contact with Melvin Skinner, another coconspirator, who was responsible for transporting large amounts of marijuana. [Doc. 216, pg. 238-39]. Over 113 calls were places between Skinner and Capers. [Doc. 216, pg. 238-39]. Not only was the number astonishing, the timing of these calls was revealing. For instance, law enforcement arrested Skinner with "a million dollars worth of Mexican marijuana," Capers was "one of the first people" Skinner wanted to called. [Doc. 216, pg. 226-27]. Once Capers learned about Skinner's arrest, he began contacting Mr. West, as well as numerous other members of the conspiracy. [Doc. 216, pg. 218]. Mr. West testified that on July 16, 2006—the day Skinner was arrested—Capers left him a voicemail saying "the worse possible news or worse possible thing had happened." [Doc. 200, pg. 175]. Capers' calls to Mr. West hardly seem as altruistic as he claims them to be.

The Court notes that Capers chose to testify in his own defense and provided a competing narrative for his relationships with the coconspirators. The jury, as the trier of fact, rejected his profession of innocence. In light of the substantial evidence presented by the Government, assuming there were audio recordings that reflected Capers' claims, a reasonable probability does not exist that the result of the proceeding would have been different had these recordings been introduced. *See Bagley*, 473 U.S. at 678. Accordingly, the Court finds this claim to be without merit.

### ii. Counsel's failure to object to the jury pool

Capers argues that his counsel failed to object to the jury pool, which, he claims, was biased against him because half of the jurors had family in law enforcement. He contends that counsel

failed to perform a competent preliminary examination to exclude biased jurors, which resulted in an unfair jury.

Thirteen of the forty-two person venire reported having a family member or close friend employed by a law enforcement agency. [Doc. 209, pg. 44-51]. However, of the twelve jurors chosen and four alternates selected to hear the evidence, only one juror had a family member in law enforcement [Doc. 209, pg. 124]. This one particular juror testified that he believed he had a cousin who was the chief of police in Townsend, Tennessee, but stated that they did not talk much. [Doc. 209, pg. 45, 87]. Another juror reported having a family member who worked for the government, but *voir dire* revealed that her husband worked for a utility company rather than law enforcement. [Doc. 209, pg. 85-86].

The trial judge specifically asked the jurors if they would be able to "render a verdict solely on the evidence presented at trial and within the context of the law, as the court will give it to [them] in [the court's] instructions, disregarding any other ideas, notions, or beliefs that [they] may have encountered in reaching [the] verdict." [Doc. 209, pg. 54]. He asked this to the panel. Indeed, during *voir dire*, the one juror with a cousin in law enforcement stated that this fact would not affect his ability to weigh the evidence and that he could be fair and impartial to both parties in the case. [Doc. 209, pg. 87-88]. The other members of the jury venire who had connections with law enforcement were ultimately dismissed from jury duty [Doc. 209, pg. 124].

Despite his claim, Capers has failed to present any evidence to raise even an inference that the jury that convicted him or the jury venire as a whole was biased. Thus, his allegation of ineffective assistance concerning the jury selection is baseless. Accordingly, the Court finds this claim to be without merit.

### iii. Counsel's failure to object to hearsay testimony

Capers asserts that his counsel was ineffective for failing to object to the introduction of hearsay testimony at trial. Once again, Capers fails to provide any factual support or details to support this claim. Indeed, "hearsay" is not mentioned once in his supporting memorandum of law, his reply, or his supplemental reply. This fact alone constitutes a basis for the dismissal of the claim. *See Jefferson*, 730 F.3d at 547 (6th Cir. 2013) ("conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255").

That said, on appeal, Capers raised hearsay issues before the Sixth Circuit. There he argued that the trial court should have excluded Julie Newman's trial testimony. She testified that Capers called her and told her that he needed to talk to Mr. West. She asked why, to which Capers responded "Driver down." Newman testified that "driver down" meant that a driver who had been transporting marijuana had been arrested. The Sixth Circuit noted that the "court did not plainly err in admitting Capers' 'driver down' statement as not hearsay because it was offered against Capers." *Jordan*, 511 F. App'x at 562 (citing Fed.R.Evid. 801(d)(2)(A)("A statement that meets the following conditions is not hearsay: ... The statement is offered against an opposing party and ... was made by the party in an individual or representative capacity....")).

Capers also objected to the admissibility of "audio tapes of Melvin Skinner's conversation from jail with his wife…." *Jordan*, 511 F. App'x at 562. While the Sixth Circuit acknowledged that the admission of this conversation posed a "close call," it refused to disturb the district court's findings. *Id.* at 563. Moreover, it noted the "admission of these statements did not affect Capers's substantial rights…. The conversation only mentions Capers twice, and its substance is nearly incomprehensible. Skinner did not state directly that Capers was involved in the conspiracy or provide any details of his involvement. The statement merely shows that Skinner wanted his wife

12

to contact Capers." *Jordan*, 511 F. App'x at 563.

Absent highly exceptional circumstances, none of which is presented in this case, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal.'" *Holmes v. United States*, 281 F. App'x 475, 479 n.3 (6th Cir. 2008) (quoting *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)). Capers has not presented an appropriate basis for the Court to revisit this issue. As such, these claims of ineffective assistance of counsel are without merit.

### iv. Counsel's failure to present evidence pertinent to the defense or adequately investigate the case

Next, Capers alleges that counsel failed to interview crucial defense witnesses, which prevented counsel from calling them as witnesses during trial. He asserts that these witnesses would have provided testimony to contradict the Government's evidence concerning the quantity of drugs attributable to him by limiting the scope of his involvement in the conspiracy. [Doc. 339, pg. 13-14].[2]

In his reply memorandum, Capers identifies one individual named "Britt," whom he claims would have testified that he vacationed with Capers numerous times during the period of the conspiracy, and that he never witnessed any evidence that Capers was involved with narcotics. [Doc. 351, pg. 6]. Further, he claims Britt would have stated that Capers was constantly concerned with having sufficient funds on vacation.

Capers fails to provide Britt's full name, undermining his implication that they were close friends who spent a substantial amount of time together. In any event, Britt's alleged testimony is

---

[2] Capers additionally alleges that counsel failed to investigate the telephone recordings between him and Mr. West that the Government withheld, preventing counsel from introducing this evidence at trial. He maintains that this evidence would have been crucial to his defense. [Doc. 351, pg. 11-12]. As this claim basis relates directly to his assertion that counsel failed to object to a *Brady* violation, it will not address it a second time.

not the type of testimony that would affect the Court's confidence in the outcome of this case. *See Vasquez v. Bradshaw*, 345 F. App'x 104, 119 (6th Cir. 2009). For instance, Britt would not have provided specific impeachment evidence, *see Vasquez*, 345 F. App'x at 119 (noting that the missing testimony would have revealed numerous inconsistencies in key witness's timeline and show that her testimony was coached), nor would his testimony undermine the corroborating evidence presented by the Government, *see id.* (highlighting that the missing testimony would have provided "important impeachment evidence").

Britt's proposed testimony would not have exonerated Capers, just that Britt never saw Capers sell marijuana. See *Fitchett v. Perry*, 644 F. App'x 485, 492 (6th Cir. 2016) (noting that defendant's proposed witnesses would not have exonerated him as neither were present during the underlying crime). Given the considerable amount of evidence presented against him, *see Jordan*, 511 F. App'x at 559, 564-567, Capers has not shown "a reasonable probability that the outcome of the proceedings would have been different had his counsel introduced" Britt's testimony. See *Fitchett*, 644 F. App'x at 493.

Capers also claims that he provided counsel with a list of names of individuals who were in the same jail area as Mr. West. He labels this group as "County Jail." Capers maintains that this group would have testified that while Mr. West was in holding, he bragged to other jail inmates about fabricating his testimony about Capers and his brother in order to obtain a reduced sentence. Other than this general claim, Capers provides no supporting details or context for his claim. At no point does Capers identify any specific individual in this group or provide any other supporting details. Thus, the Court finds this claim fails to sufficiently state a valid claim. *See Jefferson*, 730 F.3d at 547 (6th Cir. 2013) ("conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255").

The Court finds that Capers' counsel's investigation was not unreasonable. "In determining whether a [counsel's] performance was reasonable, [courts should] give a healthy amount of deference to counsel's tactical and litigation decisions; they are 'virtually unchallengeable' in the ordinary case." *Vasquez v. Bradshaw*, 345 F. App'x 104, 115 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 688)). Although "[t]he law as developed so far has not settled on a definitive statement of what a 'reasonable investigation' entails," the Sixth Circuit has held that claims by petitioners that their attorneys failed to interview potential critical witnesses are "within the known contours of the duty." *Vasquez*, 345 F. App'x at 115. Indeed, "[a]lthough counsel need not investigate all potential witnesses, counsel is required to investigate fruitful leads that a reasonable attorney would pursue." *United States v. Arny*, 831 F.3d 725 (6th Cir. 2016) (a duty exists to "investigate all witnesses who may have information concerning his or her client's guilt or innocence" (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). In this case, Capers has not presented any witness whose testimony would have had any impact on the result of these proceedings. Based on the foregoing, the Court finds this claim meritless.

### v. Counsel's failure to object to the dual role of the DEA Agent

Finally, Capers asserts that counsel was ineffective for failing to object to Agent David Lewis of the Drug Enforcement Agency ["DEA"] testifying as both an expert and a fact witness. He contends that the lack of both effective curative instructions and a clear demarcation between his testimony as an "expert" witness and as a "fact" witness permitted prejudicial statements to reach the jury uncontested and without the proper admonition from the court. [Doc. 339, pg. 16-17]. Capers argues that counsel's failure to object to such testimony cannot be characterized as litigation strategy.

The Sixth Circuit addressed this issue in Capers' case on appeal. *Jordan*, 511 F. App'x at 567-68. It held that "[a] witness may testify as a fact witness and an expert witness if there is a cautionary jury instruction regarding the witness's dual roles or a clear demarcation between the fact and expert testimony." *Jordan*, 511 F. App'x at 567. The Sixth Circuit found that "the [trial] transcript demonstrates that [the agent's] fact testimony was clearly demarcated from his opinion testimony. *Jordan*, 511 F. App'x at 568. It also noted that the district court gave an appropriate cautionary instruction on weighing expert testimony. Accordingly, it found that "the district court did not plainly err by not giving a contemporaneous dual-role limiting instruction." *Jordan*, 511 F. App'x at 568.

Capers has not presented an appropriate basis for the Court to revisit this issue. *See Holmes*, 281 F. App'x at 479 n.3 (absent highly exceptional circumstances, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal'" (quoting *DuPont*, 76 F.3d at 110 (6th Cir. 1996)). Accordingly, the Court finds that this claim is without merit.

## IV. CONCLUSION

The Court finds that Capers has failed to demonstrate that he is entitled to relief under § 2255 and his motion to vacate, set aside or correct the sentence [Doc. 332] will be DENIED. This action will be DISMISSED.

The Court now must consider whether to issue a certificate of appealability (COA) should Capers file a notice of appeal, since he may not appeal a final order in a § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). Issuance of a COA depends on whether Capers has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will CERTIFY that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will DENY Capers leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Capers having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability SHALL NOT ISSUE. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**SO ORDERED**:

_____
**UNITED STATES DISTRICT JUDGE**